MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
Sarah Zenewicz, Bar No. 258068
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001
eric.meckley@morganlewis.com
sarah.zenewicz@morganlewis.com

Thomas Duda, Bar No. 350991
1400 Page Mill Road
Palo Alto, CA 94304-1124
Tel: +1.650.843.4000
Fax: +1.650.843.4001
thomas.duda@morganlewis.com

Attorneys for Defendants
VESTIS SERVICES, LLC (sued as
WESTERN FIRST AID & SAFETY),
VESTIS CORPORATION AND VESTIS
GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAMANTHA SHAUNEE BROWN, an individual on behalf of herself and all others similarly situated,

Plaintiff,

vs.

WESTERN FIRST AID & SAFETY, a business entity of unknown form; VESTIS CORPORATION, a business entity of unknown form; VESTIS GROUP, INC., a Delaware Corporation; KATIE HALL, an individual; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:24-cv-06238

**VESTIS DEFENDANTS' NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

[Los Angeles County Superior Court CASE NO. 24STCV15418]

[28 U.S.C. §§ 1332, 1441, 1446 AND 1453]

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Vestis Services, LLC ("Vestis Services" sued as Western First Aid & Safety), Vestis Corporation and Vestis Group Inc.'s ("Vestis Group" and collectively with Vestis Services and Vestis Corporation, "Vestis") hereby removes the above-entitled action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND

1. On June 20, 2024, Plaintiff Samantha Shaunee Brown ("Plaintiff") filed a putative class action complaint in Los Angeles Superior Court, entitled *Samantha Shaunee Brown, an individual on behalf of herself and all others similarly situated v. Western First Aid & Safety, a business entity of unknown form; Vestis Corporation, a business entity of unknown form; Vestis Group, Inc., a Delaware Corporation; Katie Hall, an individual; and DOES 1 through 50, inclusive* (the "Complaint").

2. On June 25, 2024, Plaintiff served copies of the Summons and Complaint on the registered agent for Vestis. A true and correct copy of Plaintiff's Summons and Complaint is attached hereto as **Exhibit A**.

3. Plaintiff seeks to represent a class comprised of "all current and former employees within the State of California who, at any time from four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt hourly employees by Defendants." Compl. ¶ 1.

4. Plaintiff alleges eleven (11) causes of action for violations arising out of the California Labor Code. These are failure to: (1) Pay Minimum Wages (Cal.

Lab. Code §§ 204, 1197, 1194.2, and 1197); (2) Pay Wages and Overtime (Cal. Lab. Code § 510); (3) Provide Compliant Meal Periods (Cal. Lab. Code § 512); (4) Provide Compliant Rest Breaks (Cal. Lab. Code § 226.7); (5) Pay Accrued But Unused Vacation Time (Cal. Lab. Code § 227.3); (6) Provide Compliant Wage Statements (Cal. Lab. Code § 226(a)); (7) Timely Pay Final Wages (Cal. Lab. Code § 203); (8) Timely Pay All Wages (Cal. Lab. Code § 205); (9) Maintain Required Payroll Records (Cal. Lab. Code §§ 1174, 1174.5); and (10) Reimburse Business Expenses (Cal. Lab. Code § 2802(a)). The 11th Cause of Action is derivative of the first ten. (Cal. Bus. & Prof. § 17200 *et seq*.).

5. **Exhibit B** constitutes all the pleadings, process, and orders served upon or filed by Vestis in the Superior Court action.

## II. REMOVAL IS TIMELY

6. This Notice of Removal is timely filed, pursuant to 28 U.S.C. section 1446(b), in that it is filed within 30 days of service on Vestis.

7. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

8. Plaintiff brings this action on behalf of a putative Class.[1] (Compl. ¶ 14). Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between the named Plaintiff (and putative Class members) and Vestis; (ii) the aggregate number of putative Class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Vestis denies Plaintiff's factual

[1] Vestis expressly denies and reserves the right to contest at the appropriate time that this action can proceed as a class action. Vestis further denies Plaintiff's claims and deny that she can recover any damages or penalties.

allegations and denies that Plaintiff or the Class(es) she purports to represent are entitled to the relief requested (or any relief whatsoever), based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

**A. <u>Minimal Diversity of Citizenship Exists.</u>**

9. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

**1. Plaintiff Is A Citizen Of California.**

10. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship for an individual is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011).

11. In the Complaint, Plaintiff alleges that she "resides in California and, during the time period relevant to this Complaint, was employed by Defendants as a non-exempt hourly employee within the State of California." Compl. ¶ 4. Plaintiff has represented to Vestis that she resides in California and did so for the duration of her employment. Declaration of Alma Magana in Support of Notice of Removal



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

("Magana Decl."), ¶ 6. In addition, the Class that Plaintiff seeks to represent are expressly comprised of persons employed within the State of California and therefore at least one putative class member is a resident of California.

**2. Vestis Services, Vestis Group and Vestis Corporation are Citizens of Delaware and Georgia.**

12. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Vestis Services is now, and ever since this action commenced has been, a limited liability company organized in the State of Delaware with its principal place of business in Georgia.

13. Under CAFA, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Vestis Group and Vestis Corporation are corporations organized in the State of Delaware with their principal place of business in Georgoa.

14. The "principal place of business" is the entity's "nerve center," or "the place where an [association's] officers direct, control, and coordinate the [association's] activities." *Hertz v. Friend*, 130 S. Ct. 1181, 1192 (2010). "[I]n practice," the Supreme Court explained, "it should normally be the place where the [association] maintains its headquarters provided that the headquarters is the actual center of direction, control, and coordination. . . ." *Id.* A principal place of business is often the office which the public considers to be its main place of business. *Id*. at 1193. The Supreme Court emphasized in *Hertz* that the "nerve center test" should be one of "administrative simplicity." *Id.*

15. Vestis's principal place of business is located at Roswell, Georgia. Declaration of Altaf Bhandwadia In Support of Notice of Removal ("Bhandwadia Decl."), ¶ 4. Vestis's high-level management team is based in Georgia and directs its business from the Georgia headquarters. *Id.* The majority of Vestis's executive

and high-level meetings take place in Georgia. *Id.* at ¶ 5. Overall business strategy is directed, controlled, and coordinated in Roswell, Georgia. *Id.* The greater part of Vestis's domestic administrative functions (including Information Technology, Finance, Accounting, Tax, Talent Acquisition, Marketing and Strategy, Compensation and Benefits, and Human Resources operations) are based in Georgia. *Id.*

16. As a result, Vestis Services, Vestis Group and Vestis Corporation are not now and was not at the time of the filing of the Complaint in this action, a citizen of California. *Id.* Vestis Services, Vestis Group and Vestis Corporation are now and, at the time this action commenced, citizens of Delaware and Georgia. *Id.* at ¶ 3.

**3. An In-State Defendant Does Not Defeat Removal.**

17. Plaintiff has also named Katie Hall, an individual, as a Defendant. Defendant Hall's citizenship is not relevant because minimal diversity is met. 28 U.S.C.A. § 1332(d)(2)(A).

**4. Doe Defendants' Citizenship Must Be Disregarded.**

18. For purposes of determining diversity for removal, the existence of "Doe" defendants are immaterial. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Soliman v. Philip Morris*, Inc., 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (holding that for removal purposes, the citizenship of defendants sued under fictitious names are disregarded).

19. Accordingly, Plaintiff is a citizen of a state different than Vestis Services, Vestis Group and Vestis Corporation and therefore diversity jurisdiction

exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity").

**B. <u>The Putative Class Has More Than 100 Members.</u>**

20. Based on Plaintiff's Class definition, the putative Class includes more than 100 members. Specifically, the putative Class is defined "all current and former employees within the State of California who, at any time from four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt hourly employees by Defendants." Compl. ¶ 1. There are at least 3,512 such individuals. Magana Decl., ¶ 3.

**C. <u>The Amount in Controversy Exceeds Five Million Dollars</u>**

21. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

22. A removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

23. A removing party's burden to establish the amount in controversy is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee,* 135 S. Ct. at 554. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citations omitted).

24. A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *2 (C.D. Cal. April 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." (citation omitted); *see also LaCross v. KnightTransp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will actually owe. *LaCross,* 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy.").

25. Under *Dart Cherokee,* a removing defendant is not required to submit evidence in support of its removal allegations. *Roa v. TS Staffing Servs, Inc.*, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015). However, as demonstrated below, Defendant has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5 million, and the Court therefore has jurisdiction pursuant to CAFA. As demonstrated below, when the claims of the Class are aggregated, their claims, including alleged statutory attorneys' fees, put into controversy over $5 million. 28 U.S.C. § 1332(d)(2).

26. Although Vestis expressly denies Plaintiff's factual allegations and denies that she or the putative class that she seeks to represent are entitled to any relief, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating

claims of the putative class member as set forth in 28 U.S.C. § 1332(d)(6).[2] Based on the allegations in the Complaint, Plaintiff has put more than $5 million in controversy as demonstrated herein, and CAFA removal is appropriate.

### 1. Plaintiff's Minimum Wage Cause of Action Places at Least $2,896,712 in Controversy.

27. Plaintiff alleges that "Defendant had a consistent policy of misstating Class Members' time records and failing to pay Class Members for all hours worked." Compl. ¶ 48.

28. Labor Code section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . , including interest thereon, reasonable attorney's fees, and costs of suit." Labor Code section 1194.2 provides that in any action "to recover wages because of the payment of a wage less than the minimum wage . . . an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid[.]"

29. Based on Vestis's records, there are at least 3,512 putative class members who have worked at least 222,824 workweeks during the relevant period. Magana Decl., ¶ 4. In, 2021, the California minimum wage for employers with 26 employees or more was $13.00 per hour, which is the lowest applicable minimum wage rate for the purposes of this analysis.

---

[2] This Notice of Removal discusses the nature and amounts of damages placed in controversy by the allegations in Plaintiff's Complaint. Vestis's reference to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Vestis maintains that each of Plaintiff's claims is without merit and that Vestis is not liable to Plaintiff. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages whatsoever based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.,* 627 F.3d 395, 400 (9th Cir. 2010).

30. Vestis's conservative calculation of the amount in controversy for Plaintiff's unpaid minimum wage claim is $2,896,712, which includes $1,448,356 in unpaid minimum wages ($13.00 x 30 minutes per workweek x 222,824 workweeks) and $1,448,356 in liquidated damages. The assumption of 6 minutes of unpaid minimum wages per day for each day of a five-day workweek is a reasonable estimate given Plaintiff's allegations that "Defendants, and each of them, have intentionally and improperly changed, adjusted and/or modified the hours of Class Members, which resulted in off the clock work and underpayment of all wages owed to Class Members over a period of time, while benefitting Defendants." Compl. ¶ 48. *See Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants' assumption of 2.5 hours per employee per week was reasonable for Minimum Wage claim damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work).

**2. Plaintiff's Meal Period Cause of Action Places at Least $4,240,340.72 in Controversy.**

31. Plaintiff seeks to recover meal period premiums for the Class based on her allegations that she and the Class did not receive compliant meal periods: "Defendants placed their needs over Class Members lawful meal breaks because the demands of the job would not avail them the opportunity to take a lawfully uninterrupted and off-duty meal break." Compl. ¶ 71.

32. Labor Code section 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code section 226.7(b) states that if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one additional hour at the regular rate of pay for each workday that the meal period is not provided.

/ / /

33. Based on Vestis's records, there are at least 3,512 putative class members who have worked at least 222,824 workweeks during the relevant period and the average hourly rate during this period is $19.03. Magana Decl., ¶ 3.

34. Vestis's conservative calculation of the amount in controversy for Plaintiff's meal period cause of action is $4,240,340.72 (which assumes one non-compliant meal period per workweek, 222,824 workweeks x $19.03 meal period premium). Courts have found that an assumption of one violation per workweek is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged a "policy and/or practice" of failing to provide compliant meal periods. Compl. ¶ 33. *See La Grow v. JetBlue Airways Corp.*, 2024 WL 3291589, at *6 (C.D. Cal. July 3, 2024) ("Here, La Grow's pattern and practice allegations support the assumption that each class member suffered a meal and rest break violation for every four shifts worked, based on what this Court and other courts in the Ninth District have found reasonable"); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations."); *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations).

**3. Plaintiff's Rest Break Cause of Action Places at Least $4,240,340.72 in Controversy.**

35. Plaintiff seeks to recover meal period premiums for the Class based on her allegations that she and the Class did not receive compliant rest periods: "Defendants placed their needs over Class Members lawful rest breaks and this resulted in Class Members consistently having to work through their scheduled rest breaks because the demands of the job would not avail them the opportunity to take

a lawfully uninterrupted and off-duty rest break." Compl. ¶ 77.

36. Labor Code section 226.7(b) states that if an employer fails to provide an employee a rest period in accordance with state law, the employer shall pay the employee one additional hour at the regular rate of pay for each workday that the rest period is not provided.

37. Vestis's conservative calculation of the amount in controversy for Plaintiff's rest period cause of action is $4,240,340.72 (222,824 workweeks x $19.03 rest period premium). The computation is based on Plaintiff's allegation of Vestis's "policy and/or practice of failing to authorize and permit Class Members to take uninterrupted, duty-free, 10-minute rest periods for every four hours worked, or major fraction thereof, and failing to pay one hour of pay at the Class Member's regular rate of pay in lieu thereof." Compl. ¶ 33. The computation is based on the assumption of a violation rate of one non-compliant rest period per workweek for each Class member. An assumption of one violation per workweek is generally accepted as a reasonable and conservative assumption when calculation the amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged a "policy and/or practice" of failing to provide rest periods. *See La Grow*, 2024 WL 3291589, at *6; *Danielsson*, 2019 WL 7290476, at *6; *Chavez*, 2019 WL 1501576, at *3.

### 4. Plaintiff's Wage Statement Cause of Action Places at Least $5,406,950 in Controversy.

38. Plaintiff seeks to recover wage statement penalties for the Class based on her allegations that: "…the wage statements given to Class Members failed to accurately account for unpaid wages and overtime because their actual hours worked were under-reported due to off the clock work. Additionally, the wage statements given to Class Members failed to accurately account for premium pay for deficiently provided meal periods and rest breaks." Compl. ¶ 88. Plaintiff additionally alleges that Defendant's failure to provide compliant wage statements

was "knowing and intentional." Compl. ¶ 90.

39. Labor Code section 226(e)(1) provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

40. Based on Vestis's records, there are at least 1,983 putative class members who received at least 70,519 wage statements during period starting one year before Plaintiff filed her Complaint (beginning June 20, 2023). Magana Decl., ¶ 4.

41. Vestis's conservative calculation of the amount in controversy for Plaintiff's wage statement cause of action is $5,406,950, which includes:

- 190 putative class members who received only one wage statement for whom $9,500 in wage statement penalties are placed in controversy (190 x $50 initial wage statement penalties = $9,500);
- 725 putative class members who received between two (2) and forty (40) wage statements for whom $1,125,450 in wage statement penalties are placed in controversy (based on $50 for the initial wage statement and $100 for subsequent wage statements); and,
- 1,068 putative class members who received more than forty (40) wage statements during the relevant period for whom $4,272,000 in wage statement are placed in controversy (based on a $50 initial wage statement penalty and $100 for each subsequent wage statement up to a maximum of $4,000 per putative class member).

Magana Decl., ¶ 4. Because Plaintiff alleges deficiencies in Vestis's wage statements owing to the following: (i) off the clock work that resulted in improperly

recorded actual hours worked, (ii) "deficiently provided meal periods and rest breaks" and (iii) that "Class Members cannot promptly and easily determine" required information, it is reasonable to assume a 100% violation rate. Compl. ¶¶ 88, 90. *See Bartholomew v. Goodman Mfg. Co.*, L.P., 2022 WL 4355147, at *6 (E.D. Cal. Sept. 20, 2022) (finding 100% wage statement violation rate reasonable); *Diaz v. Ardagh Metal Bev. USA, Inc.*, No. 222CV00100TLNKJN, 2022 WL 3368537, at *6 (E.D. Cal. Aug. 15, 2022) (same); *Salazar v. Johnson and Johnson Consumer Inc.*, 2018 WL 4560683, at *5 (C.D. Cal. Sept. 19, 2018) (same); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *7 (C.D. Cal. May 5, 2016) (same).

**5. Plaintiff's Final Pay Cause of Action Places at Least $6,410,448 in Controversy.**

42. Plaintiff seeks to recover wage statement penalties for the Class based on her allegations that: "Numerous Class Members are no longer employed by Defendants; they either quit Defendants' employ or were fired therefrom" and that "The wages withheld, at times, from these Class Members, or some of them, by Defendants remained due and owing for more than thirty (30) days from the date of separation from employment." Compl. ¶¶ 94, 96. Plaintiff additionally alleges that "Defendants' failure to pay said wages within the required time was willful within the meaning of Labor Code § 203." Compl. ¶ 97.

43. Penalties are available "If an employer willfully fails to pay…any wages of an employee who is discharged or who quits." Cal. Lab. Code § 203(a).

44. Labor Code section 203 provides for penalties that "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, the wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent


MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

45. The statute of limitations for waiting-time penalties claims is three years. *Pineda v. Bank of Am.*, N.A., 50 Cal. 4th 1389, 1395, 1398 (2010).

46. Based on Vestis's records, there are at least 1,420 former employees terminated on or after June 20, 2021, who fall within the Class. Magana Decl., ¶ 5. The average hourly rate for those 1,420 former employees is $18.81 per hour. *Id.*

47. Vestis's conservative calculation of the amount in controversy for Plaintiff's waiting time penalty claim is $6,409,386.06 (1,420 terminated class members x $18.81 hourly rate x 8 hours per day x 30 days). The computation of the amount in controversy is based on the allegation that each of the 1,420 terminated employees was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages. It is reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day penalty calculated at each former employee's daily wage rate. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal

periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty"). Here, Plaintiff alleges that "Defendants, and each of them, have intentionally and improperly changed, adjusted and/or modified the hours of Class Members, which resulted in off the clock work and underpayment of all wages owed to Class Members over a period of time, while benefiting Defendants. During the relevant time period, Defendants thus regularly failed to pay minimum wages to Class Members, to their detriment." Compl. ¶ 48.

**6. A Reasonable Estimate of Attorneys' Fees Is $5,798,697.86.**

48. In addition to the wage statement penalties, Plaintiff seeks attorneys' fees. Compl. ¶¶ 68, 92, 103, 111. When, as here, an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy"). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

49. The Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Fritsch*, 899 F.3d at 795 and 796, fn. 6. Courts have used the 25% benchmark to calculate potential fees for purposes of the CAFA amount in controversy. *See, e.g.*, *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *8 (C.D. Cal. Jan. 6, 2016); *Oda*, 2015 WL 93335, at *5-6; *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug.

4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in controversy for jurisdictional purposes."). Thus, measuring attorneys' fees at 25% of potential liability, Plaintiff's Complaint puts into controversy at least $5,798,697.86 in attorneys' fees.

50. Even if the 25% benchmark is not used, it is reasonable to assume that Plaintiff's potential future attorneys' fees place at least an additional $1,000,000 in controversy. Plaintiff's counsel has repeatedly presented to courts in fee motions in class actions that hourly rates for attorneys at his firm range from $450 to $800. *See, e.g.*, Declaration of David Yeremian in Support of Plaintiff's Unopposed Motion for Final Approval of Stipulation and Agreement to Settle Class Action, *Valenzuela v. Network Medical Management, Inc.*, Los Angeles Superior Court Case No. 21STCV39548 (May 10, 2024), ¶ 12 (claiming a rate of $800 per hour for David Yeremian); Declaration of Emil Davtyan ISO Plaintiff's Motion for Attorney Fees, Costs, and Incentive Award, *Wightman v. Cobham Advanced Electronic Solutions, Inc.*, Central District of California Case No. 3:21-cv-01784-TWR-DEB (June 13, 2024), ¶ 14 (claiming a rate of $695 per hour for Emil Davtyan); Declaration of David Yeremian in Support of Plaintiff's Unopposed Motion to Approve the Private Attorneys General Act Settlement and Release Under California Labor Code §§ 2698 *et seq*., *Morales v. San Diego Sunrise Management Company*, San Diego Superior Court Case No. 37-2020-00015694-CU-OE-CTL (November 23, 2021), ¶ 32 (claiming a rate of $450 per hour for Natalie Haritoonian).

51. Based on a conservatively estimated $500 average per hour rate, it would take only 2,000 billable hours for Plaintiff's counsel to reach at least $1,000,000 in attorneys' fees in this action. Litigating a wage and hour class action on behalf of a putative class of thousands of employees through discovery motions, dispositive motions, trial and appeal would easily exceed 2,000 billable hours. *See,*

*e.g.*, *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour). As such, Vestis's assumption that there are at least $1,000,000 in attorneys' fees place in controversy by this wage and hour class action is reasonable.

**7. Summary of the Amount Placed in Controversy.**

52. As described above, a reasonable estimate of the amount placed in controversy by Plaintiff's causes of action for minimum wages, overtime wages, meal break violations, rest break violations, vacation payout, wage statement violations, waiting time, expense reimbursement, and attorneys' fees through trial well exceeds $5,000,000:

| Cause of Action | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | **$2,896,712.00** |
| Meal Period Violations | **$4,240,340.72** |
| Rest Period Violations | **$4,240,340.72** |
| Wage Statement Violations | **$5,406,950.00** |
| Failure to Timely Pay Final Wages | **$6,410,448.00** |
| Attorneys' Fees | **$1,000,000.00** |
| **Total** | **$24,194,791.44** |

53. As a result, Vestis has shown by a preponderance of the evidence that the amount placed in controversy by Plaintiff's causes of action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

54. As set forth above, this Notice of Removal is filed within thirty days of service of the Summons and Complaint upon Vestis.

55. Vestis will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

56. Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it embraces the county in which the removed action was pending.

57. **Exhibits A and B** constitute all the process, pleadings, and orders served on Vestis in this case.

58. The prerequisites for removal under 28 U.S.C. §§ 1441 and 1453 have been met.

59. Because this Court has original jurisdiction under the provisions of 28 U.S.C. §1332(d), removal of this action is proper pursuant to 28 U.S.C. § 1441.

60. As required by Federal Rule of Civil Procedure 7.1, Vestis concurrently filed its Corporate Disclosure Statement.

61. If any question arises as to the propriety of the removal of this action, Vestis requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

62. **WHEREFORE,** Vestis, desiring to remove this case to the United States District Court for the Central District of California, pray that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: July 24, 2024

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Eric Meckley*
Eric Meckley
Sarah Zenewicz
Thomas Duda

Attorneys for Defendants
VESTIS SERVICES, LLC (sued as WESTERN FIRST AID & SAFETY), VESTIS CORPORATION AND VESTIS GROUP, INC.